# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROY J. DESMORE, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 14-2198** |
| **BAKER HUGHES OILFIELD OPERATIONS, INC.** et al. | **SECTION: "G" (5)** |

## ORDER AND REASONS

Presently pending before the Court are Defendant Baker Hughes Oilfield Operations, Inc.'s ("BHOOI") "Motion for Summary Judgment"[1] and Plaintiffs Roy J. Desmore ("Desmore") and Lillian Desmore's (collectively "Plaintiffs") "Cross-Motion for Partial Summary Judgment on the Issue of Seaman Status."[2] Having reviewed the motions, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will deny the pending motions.

## I. Background

### A.   *Factual Background*

In their complaint, Plaintiffs allege that Desmore was a Jones Act Seaman employed by BHOOI "as a crew member assigned to a vessel in navigable waters as a wire line operator, and further, performed duties in this capacity that directly related and contributed to the accomplishment of the function, mission, and purpose [of the vessel,] the Ensco 87."[3]  According to Plaintiffs, Desmore was injured on the Ensco 87 "when a side entry sub clamp failed," causing a cable to slip

---

[1] Rec. Doc. 58.

[2] Rec. Doc. 75.

[3] Rec. Doc. 1 at 3.

and trapping his left hand between the wire line and a sheave.[4] This accident caused two of Desmore's fingers to be amputated and left him with permanent hand damages.[5]

## B.   *Procedural Background*

Plaintiffs filed a complaint in this matter on September 23, 2014 against BHOOI, his employer, and National Oilwell Varco, L.P. ("Varco"), the manufacturer of the side entry sub clamp that Plaintiffs allege failed, injuring Desmore.[6] On September 29, 2014, Varco filed an answer.[7] On October 16, 2014, BHOOI filed an answer.[8] On January 21, 2015, with leave of Court, Plaintiffs filed an amended complaint, adding claims against Ensco Offshore Company ("Ensco"), the owner of the Ensco 87.[9] On March 10, 2015, Ensco filed an answer.[10] On May 5, 2015, with leave of Court, ACE American Insurance Company filed a "Complaint of Intervention."[11] That same day Plaintiffs filed a second amended complaint.[12]

On June 26, 2015, BHOOI filed the instant motion for summary judgment.[13] On August 13, 2015, Plaintiffs filed their opposition to the instant motion.[14] That same day, Plaintiffs filed their

---

[4] *Id.* at 4.

[5] *Id.*

[6] Rec. Doc. 1.

[7] Rec. Doc. 12.

[8] Rec. Doc. 16.

[9] Rec. Doc. 34.

[10] Rec. Doc. 38.

[11] Rec. Doc. 51.

[12] Rec. Doc. 53.

[13] Rec. Doc. 58.

[14] Rec. Doc. 73.

cross-motion for summary judgment.[15] BHOOI filed its opposition on September 1, 2015.[16] On September 9, 2015, Plaintiffs filed a reply memorandum in support of their cross-motion for summary judgment.[17]

## II. Parties' Arguments

### A.   BHOOI's Arguments in Support of its "Motion for Summary Judgment"[18]

In the instant motion, BHOOI contends that Desmore "does not qualify as a seaman under the Jones Act," and that the Court should therefore grant it judgment as a matter of law.[19] In support of this assertion, BHOOI first contends that "[i]t is long and well-settled in the jurisprudence that oilfield service company workers" like Desmore, "who do not work for the vessel-owning drilling company, but rather work for service companies, and go from rig to rig to rig, performing their specialized service work for the well operators who separately hired those rigs, are not Jones Act seamen."[20]

According to BHOOI, from January 1, 2013 to September 28, 2013, the date of the accident at issue here, Desmore worked approximately 150 days and spent 24 of those days aboard jack-up rigs in the Gulf of Mexico.[21] BHOOI contends that this division of work time was typical for the

---

[15] Rec. Doc. 75.

[16] Rec. Doc. 79.

[17] Rec. Doc. 83.

[18] Rec. Doc. 58.

[19] *Id.* at 1.

[20] Rec. Doc. 58-1 at 6.

[21] Rec. Doc. 58-1 at 3–4.

entire duration of Desmore's employment as a PCL Engineer with BHOOI.[22] During 2013, BHOOI assigned Desmore to five jobs—three were performed aboard the Ensco 87 rig operated by Apache, one was performed aboard the Ensco 99 rig operated by Energy XXI, and one was performed on a land rig in Cameron Parish at a site operated by Chevron.[23] Desmore was injured aboard the Ensco 87.[24] BHOOI asserts that "[a]lthough Desmore performed three separate PCL jobs aboard the Ensco 87 rig in 2013, those jobs were assigned to him solely fortuitously, under BHOOI's standard, first in, last out rotation of its PCL Engineers.[25] BHOOI contends that Desmore was never assigned in any permanent way to the Ensco 87 rig, or any other drilling rig.[26] BHOOI asserts that it "did not own, operate, charter, borrow or have anything to do with running the Ensco 87."[27] BHOOI further contends that "none of [its] employees who worked aboard the Ensco 87 ever had anything to do with navigating the vessel."[28]

BHOOI argues that it did not own the vessels upon which Desmore worked during his tenure with BHOOI, and that "[i]t is simply not in the cards" for wireline workers like Desmore to be assigned to a single rig or job for an extended period of time.[29]

---

[22] *Id.* at 4.

[23] *Id.*

[24] *Id.*

[25] *Id.* at 4–5.

[26] *Id.* at 5.

[27] *Id.* at 6.

[28] *Id.*

[29] *Id.* at 6–7.

Using the 2013 calendar year as a reference, BHOOI notes that Desmore spent a total of 20 days aboard the Ensco 87, out of the 150 days he worked until the date of his accident. BHOOI argues that Desmore spent a total of 13 percent of his 2013 work time aboard the Ensco 87, falling "significantly short of the 30% rule-of-thumb test" required to qualify for seaman status.[30] Nonetheless, BHOOI contends, the issue of how much time Desmore spent offshore is not material, because the Ensco 87 was "not owned or operated by Desmore's employer, and was not part of any 'fleet' owned or operated by his employer."[31] According to BHOOI, courts have "summarily reject[ed] seaman status claims for oilfield service company workers like the plaintiff who go from rig to rig to rig, working on different vessels owned by different owners."[32]

BHOOI argues that the "jurisprudence is clear that the vessel owner/operator and the plaintiff's employer must be one and the same," unless one of three "very narrow sets of special circumstances" are present.[33] Specifically, BHOOI contends, seaman status may be found where the vessel owner or operator does not employ the plaintiff when: (1) the vessel owner or operator is the plaintiff's "borrowing employer;" (2) the plaintiff's  employer "has effectively manipulated his status by choosing not to own or operate the vessels aboard which the employee performs traditional, blue water seaman work," such as anchor handling; or (3) the plaintiff "is employed by a contractor providing a necessary vessel function to the vessel owner or operator," such as cooks or galley hands employed by a catering contractor.[34]

---

[30] *Id.* at 7.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 9.

[34] *Id.*

According to BHOOI, Desmore meets none of these exceptions.[35] BHOOI argues that BHOOI Desmore was not Ensco's borrowed employee, because he was paid by BHOOI, took his instruction from BHOOI, "worked solely with BHOOI's equipment and tools," and "was doing BHOOI's work at all times."[36] BHOOI further contends that it has not effectively manipulated Desmore's seaman status by choosing not to own or operate the vessels aboard which Desmore worked, because BHOOI "does not own, and never charters or borrows, any drilling vessels," and "has absolutely no control over from whom the oil companies hire the drilling rigs."[37] Finally, BHOOI argues that Desmore "is in no way analogous to a contract catering hand," because Desmore's "connection was not to the Ensco 87," but rather to "his employer, BHOOI," rendering the third exception inapplicable.[38] Thus, BHOOI contends, Desmore "is not a seaman," and his claims against BHOOI should be dismissed.[39]

**B.**   ***Plaintiffs' Opposition to BHOOI's Motion for Summary Judgment and Arguments in Support of his Cross-Motion for Partial Summary Judgment***

According to Plaintiffs, the United States Supreme Court's *Chandris v. Latsis* decision sets forth two factors for determining seaman status: "(1) the employee must contribute to the function of the vessel or the accomplishment of its mission; and (2) he must have a connection with a vessel or identifiable group of vessels that is substantial in both nature and duration."[40] As to the first

[35] *Id.*

[36] *Id.*

[37] *Id.* at 10.

[38] *Id.* at 11.

[39] *Id.* at 11–12.

[40] Rec. Doc. 74 at 7–8 (citing *Chandris v. Latsis*, 515 U.S. 347 (1995)).

*Chandris* factor, Plaintiffs argue that Desmore's work aboard both the Ensco 87 and the Ensco 99 contributed to the mission of these vessels, which "was to locate hydrocarbons."[41] Plaintiffs assert that these vessels were hired to find oil by "sending logging equipment down the hole by wireline," and "PCL services are required when the hole is severely deviated."[42] Without these PCL services, Plaintiffs assert that "the necessary logging date could not have been obtained, and these Ensco vessels would not have been able to complete their mission."[43]

As to the second *Chandris* factor, Plaintiffs argue that there is no dispute that the Ensco 99 and Ensco 87 rigs are vessels, and Desmore spent 89 percent of his active working hours aboard Ensco vessels in 2013.[44] Plaintiffs note that BHOOI seeks to include the time that Desmore spent on call, but Plaintiffs contend that this time should not be included because he was not performing the essential function of his employment, PCL services.[45] Plaintiffs contend that during the time Desmore was on call, "he was free to come and go as he pleased from the Houma base."[46] Even including his on-call time, Plaintiffs contend that Desmore still meets the 30 percent test because he was at sea on Ensco vessels for approximately 576 out of 1,647 total hours, or 35 percent of the time.[47]

---

[41] *Id.* at 8.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 10–11.

[45] *Id.* at 11.

[46] *Id.*

[47] *Id.* at 12–13.

Plaintiffs contend that there is no rule that the plaintiff's employer own the vessels on which he worked.[48] Finally, Plaintiffs also note that this Court previously rejected the exact arguments that BHOOI makes here in another case involving BHOOI, *Hurst v. Baker Hughes, Inc.*[49] Accordingly, Plaintiffs assert that BHOOI's motion for summary judgment should be denied.[50] For these same reasons, Plaintiffs also move the Court to grant partial summary judgment in their favor on the issue of Desmore's seaman status.[51]

## C.   BHOOI's Opposition to Desmore's Cross-Motion for Partial Summary Judgment

BHOOI contends that Plaintiffs' Cross-Motion for Partial Summary Judgment should be denied because Desmore is not a Jones Act seaman.[52] According to BHOOI, Desmore's work records show that in the last three years of his employment he worked on a total of twenty customers' jobs—four on land, 15 on jackup drilling rigs and one on an inland barge drilling rig.[53] Of his total 637 work days from January 1, 2011 until the date of his accident, BHOOI contends that Desmore spent only 89 days, or 13.9 percent of his time, working on these different vessels owned by different companies.[54] BHOOI contends that it is inappropriate to calculate Desmore's time based on the hours worked, rather than days worked.[55] BHOOI asserts that Tim Theriot's affidavits and

---

[48] *Id.* at 15–18.

[49] *Id.* 18–21 (citing *Hurst v. Baker Hughes, Inc.*, Civ. Action No 14-1819 (July 16, 2015) (Brown, J.)).

[50] *Id.* at 22.

[51] Rec. Doc. 75.

[52] Rec. Doc. 79 at 1.

[53] *Id.* at 3.

[54] *Id.*

[55] *Id.* at 3–4.

work history figures give Desmore credit for a full day offshore, "when he in fact may have only spent one hour of that day offshore. . . ."[56] If the test were to be based on hours worked, which BHOOI disputes, it contends that "the math would only get worse for Mr. Desmore."[57] According to BHOOI, Desmore spent 89 days working offshore over a three year period, and Desmore's argument that the Court should count only these days spent working on vessels in calculating the percentage of time spent working on vessels "is tautological absurdity."[58]

BHOOI contends that this Court's decision in *Hurst v. Baker Hughes, Inc.*, is inapplicable here.[59] It notes that this Court denied BHOOI's motion for summary judgment on seaman status, but did not adjudicate Hurst a seaman.[60] According to BHOOI, Hurst later agreed to settle his claims through the Louisiana Office of Workers' Compensation, stipulating that he was not a seaman.[61] Further, BHOOI asserts that the facts presented here are distinguishable from those presented in *Hurst*, where the employee returned to the same vessel for multiple 28-day periods over the course of a year and supervised multiple job functions on the rig.[62] BHOOI avers that here Desmore never spent more than 14 days aboard a single vessel, "and only by pure random chance and the luck of the draw did he ever return to any single vessel he had previously worked aboard."[63]

---

[56] *Id.* at 3.

[57] *Id.* at 4.

[58] *Id.*

[59] *Id.* at 5.

[60] *Id.*

[61] *Id.*

[62] *Id.* at 6.

[63] *Id.*

9

BHOOI contends that this case is similar to *Lirette v. N.L. Sperry Sun, Inc.*, where the Fifth Circuit held that a wireline worker was not a seaman.[64] BHOOI also asserts that this case is similar to *Manuel v. McDermott Gulf Operating Co.*, a Western District of Louisiana case.[65] It avers that this case is identical to these case "in that all three plaintiffs were itinerant oil field workers whose work took them randomly aboard many different vessels owned by many different entities to perform individual jobs that were not co-extensive in time with the mission of the vessel."[66] Accordingly, BHOOI contends that Desmore is not a Jones Act seaman, and his claims against BHOOI should be dismissed.[67]

## D.    *Plaintiffs' Reply*

In their reply brief in support of the cross-motion for partial summary judgment, Plaintiffs contend that the parties initially agreed that 2013 was a fair representation of Desmore's employment.[68] They note that the Fifth Circuit has held that employment during the year leading up to an accident is sufficient in determining an individual's seaman status.[69] Accordingly, Plaintiffs assert that this Court should base its decision only on Desmore's work in 2013, not on previous years, as argued by BHOOI in its opposition to his motion.[70]

---

[64] *Id.* at 6–7 (citing 831 F.2d 554 (5th Cir. 1987)).

[65] *Id.* at 9–12 (citing 2011 U.S. Dist. Lexis 70765 (W.D. La. June 29, 2011)).

[66] *Id.* at 12.

[67] *Id.*

[68] Rec. Doc. 83 at 2–3.

[69] *Id.* at 3 (citing *Mudrick v. Cross Equipment Ltd.*, 250 F. App'x 54, 59 (5th Cir. 2007)).

[70] *Id.*

Plaintiffs contend that the Fifth Circuit has approved the use of actual hours worked, as opposed to days worked, in determining employment status.[71] Finally, Plaintiffs assert that the facts of Desmore's employment, not his job title, determine his seaman status.[72] Plaintiffs contend that the Fifth Circuit's decision in *Lirette* is distinguishable from the facts presented here because there the plaintiff did not have a connection with a vessel or fleet of vessels, whereas here Desmore worked on Ensco vessels for four out of his six job assignments in 2013, comprising 31.3 percent of his working hours.[73]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[74] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[75] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[76] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue

---

[71] *Id.* at 4 (citing *Mudrick*, 250 F. App'x at 59; *Coastal Prod. Servs. Inc. v. Hudson*, 555 F.3d 426, 440–41 & n.60 (5th Cir. 2009)).

[72] *Id.* at 5.

[73] *Id.* at 6 (citing 831 F.2d at 554).

[74] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[75] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[76] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

of fact exists and the moving party is entitled to judgment as a matter of law.[77] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[78]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[79] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[80] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[81] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[82] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[83]

On cross-motions for summary judgment, a court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving

---

[77] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[78] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[79] *Celotex*, 477 U.S. at 323.

[80] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), cert. denied, 513 U.S. 871 (1994).

[81] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012), citing *Anderson*, 477 U.S. 242 at 248–49.

[82] *Little*, 37 F.3d at 1075.

[83] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).

party.[84] "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."[85] Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive.[86]

### IV. Law and Analysis

#### A.   Applicable Law: Jones Act Seaman Status

The Supreme Court has developed a two-prong test to determine seaman status. First, a plaintiff must show that his duties "contribut[e] to the function of the vessel or to the accomplishment of its mission."[87] Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[88] "Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[89]

"The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury."[90] The Fifth Circuit has instructed "'that the question of seaman status should only be removed from the trier of fact (by summary judgment or directed verdict) in

---

[84] *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).

[85] *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

[86] *Bricklayers, Masons & Plasterers Int'l Union of Am., Local Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

[87] *Chandris*, 515 U.S. at 368.

[88] *Id.*

[89] *Id.* at 371.

[90] *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997).

13

rare circumstances and that even marginal Jones Act claims should be submitted to the jury.'"[91]

However, "judgment as a matter of law is mandated where the facts and the law will reasonably

support only one conclusion."[92]

**B.    *Analysis***

**1.    First *Chandris* Prong**

Pursuant to the first *Chandris* prong, a Jones Act seaman must "contribut[e] to the function

of the vessel or to the accomplishment of its mission."[93] The Fifth Circuit has held that it is

"relatively easy," to satisfy this prong, because "a plaintiff need only show that he does the ship's

work."[94] "This threshold requirement is 'very broad,' encompassing 'all who work at sea in the

service of a ship.'"[95]

This broad threshold has been met by a paint foreman who "direct[ed] the sandblasting and

painting of fixed platforms" from a vessel.[96] In *Wilander v. McDermott International, Inc.*, the Fifth

Circuit upheld seaman status, reasoning that the "vessel functioned as a paint boat," and, therefore,

"plaintiff's duties contributed to the function of the vessel."[97] Affirming the Fifth Circuit, the

Supreme Court established that a worker should not be precluded from seaman status because he did

not perform transportation-related functions on board, meaning that seaman status under the Jones

---

[91] *Sharp v. Johnson Bros. Corp.*, 917 F.2d 885, 888 (5th Cir. 1990) (quoting *Bernard v. Binnings Constr. Co.*, 741 F.2d 824, 827 (5th Cir. 1984)).

[92] *Becker*, 335 F.3d at 386.

[93] *Chandris*, 515 U.S. at 368.

[94] *Becker*, 335 F.3d at 378 (quoting *Chandris*, 558 U.S. at 368) (internal brackets omitted).

[95] *Id.* (quoting *Chandris*, 515 U.S. at 368).

[96] *Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 90 (5th Cir.1989), *aff'd* 498 U.S. 337 (1991).

[97] *Id.*

14

Act may be fulfilled by performing functions other than navigation.[98] The Fifth Circuit has not

articulated a per se rule that wireline workers are not Jones Act seamen, favoring a fact-intensive

analysis.[99]

On this point,  BHOOI contends that "none of [its] employees who worked aboard the Ensco

87 ever had anything to do with navigating the vessel."[100] Desmore counters that his work aboard

both the Ensco 87 and the Ensco 99 contributed to the mission of these vessels, which "was to locate

hydrocarbons."[101] Desmore asserts that these vessels were hired to find oil by "sending logging

equipment down the hole by wireline," and "PCL services are required when the hole is severely

deviated."[102] Without these PCL services Desmore asserts that "the necessary logging date could not

have been obtained, and these Ensco vessels would not have been able to complete their mission."[103]

Plaintiffs have presented sufficient evidence to convince the Court that Desmore's duties

contributed to the function of the vessel or to the accomplishment of its mission. In his affidavit,

Desmore attests that "[w]hen he was aboard the Ensco 99 and Ensco 87, he worked side-by-side

with the other crew members of the vessels doing the vessels' work."[104] Desmore also stated that he

assisted in the Ensco 87's mission of locating hydrocarbons.[105] BHOOI submits no evidence to

dispute this assertion, instead arguing that Desmore did not perform any functions related to

---

[98] 498 U.S. at 356–57.

[99] *Newman v. Superior Well Services, Inc.*, 1997 WL 208920, at *4 (E.D. La. 1997) (Clement, J.) (citing *Kattelman v. Otis Engineering Corp.*, 701 F.Supp. 560, 566 (E.D. La.1988) (Feldman, J.)).

[100] Rec. Doc. 58-1 at 6.

[101] Rec. Doc. 73 at 8.

[102] *Id.*

[103] *Id.*

[104] Rec. Doc. 75-4 at 2.

[105] *Id.*

navigation.  As noted above, the Supreme Court has found that a worker should not be precluded from seaman status because he did not perform transportation-related functions on board a vessel.[106] Accordingly, the Court finds that no genuine issue of material fact exists and Plaintiffs are entitled to summary judgment on the issue of Desmore's contribution to the function of the vessel. *Chandris* instructs that a plaintiff must also satisfy the second prong of its test. The Court will therefore now turn to this second prong.

### 2.      Second *Chandris* Prong

The second *Chandris* prong requires that a plaintiff "have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[107] Construing this prong of *Chandris*, the Fifth Circuit has held that:

> [A] worker seeking seaman status must separately demonstrate that his connection to a vessel or fleet of vessels is, temporally, more than fleeting, and, substantively, more than incidental. These inquiries are not always distinct, but are interrelated elements of the same substantial connection requirement.[108]

Accordingly, the in evaluating the second *Chandris* prong, the Court must first determine whether there is an identifiable vessel or fleet of vessels, before turning to the temporal and substantive components.

### a.      *Identifiable Fleet of Vessels*

"In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, the question is whether the vessels are subject to common ownership or control."[109] The Fifth Circuit has allowed recovery under the Jones Act when the claimants

---

[106] *Wilander*, 498 U.S. at 356–57.

[107] *Chandris*, 515 U.S. at 368.

[108] *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 933 (5th Cir. 2014).

[109] *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 556–57 (1997)

worked on several separate vessels owned by their one employer.[110] Recovery has also been allowed when employees work aboard vessels that are neither owned nor operated by their employers, so long as all of the vessels are under the common control of one entity.[111] Accordingly, the Court rejects BHOOI's argument that Desmore is not a seaman because the vessels on which he worked were not owned or operated by BHOOI.

Here, the parties do not dispute that in 2013, the time period that the parties initially agreed provided a fair and accurate description of Desmore's entire employment,[112] Desmore worked aboard multiple vessels, of which two were owned by one entity, Ensco. While Ensco was the owner of two of the vessels, the record shows that the Ensco 87 was operated by Apache and the Ensco 99 was operated by Energy XXI. The parties do not address the issue of control beyond this point. Accordingly, the Court finds that a genuine issue of material fact exists as to whether there was a commonality of control of the Ensco 87 and the Ensco 99 making them a fleet of vessels for purposes of the Jones Act.

### b.    Duration

The parties also dispute whether Desmore's connection to the Ensco 87 and the Ensco 99 were sufficiently significant in duration. As a "general rule of thumb . . . [a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[113] As noted above, the Fifth Circuit has not articulated a per se rule

---

[110] *Bertrand v. Int'l Mooring & Marine, Inc.*, 700 F.2d 240, 245 n.10 (5th Cir. 1983) (citing cases).

[111] *Id.* (citing *Taylor v. Packer Diving & Salvage Co.*, 342 F.Supp. 365 (E.D. La.1971), *aff'd*, 457 F.2d 512 (5th Cir.1972); *Williams v. Milwhite Sales Co.*, 197 F.Supp. 730 (E.D. La.1961), *approved in Barrios v. La. Construction & Materials Co.*, 465 F.2d 1157, 1165–66 (5th Cir.1972)).

[112] BHOOI subsequently produced evidence of the time Desmore spent aboard vessels in the three years preceding the accident. Rec Doc. 79 at 2–3.

[113] *Naquin*, 744 F.3d 927, 933–34 (citing *Chandris*, 515 U.S. at 371).

that wireline workers are not Jones Act seamen.[114] Often, however, the Fifth Circuit has held that wireline operators are not Jones Act seaman because they typically have no significant connection to a vessel or fleet of vessels. In *Ardleigh v. Schlumberger, Ltd.*, the Fifth Circuit held that the plaintiff wireline operator was not a seaman because he was not assigned to a specific vessel or fleet of vessels, and had actually worked on 30 different vessels.[115] In *Langston v. Schlumberger Offshore Services, Inc.*, the Fifth Circuit held that a wireline operator who had performed jobs for 10 unrelated owners aboard 15 distinct vessels was not a seaman for Jones Act purposes because the "evidence [did] not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet."[116] In *Lirette v. N.L. Sperry Sun, Inc.*, the Fifth Circuit held that the plaintiff was not a Jones Act seaman because he performed wireline jobs for 23 different companies on 23 different drilling rigs which were not under the common ownership or control.[117]

Although the parties initially agreed that the 2013 calendar year provides a fair and accurate representation of Desmore's entire employment and should be used for determining his seaman status, BHOOI subsequently argued that the relevant period for determining the percentage of time defendant spent aboard a vessel should be the three years prior to the accident. According to BHOOI, considering the three years preceding the accident, Desmore spent only 13.9 percent of his time aboard vessels.[118] In response, Plaintiffs correctly note that the Fifth Circuit has held that employment during the year leading up to an accident is sufficient in determining an individual's

---

[114] *Newman v. Superior Well Serv., Inc.*, 1997 WL 208920, at *4 (E.D. La. 1997) (Clement, J.) (citing *Kattelman v. Otis Engineering Corp.*, 701 F. Supp. 560, 566 (E.D. La. 1988) (Feldman, J.)).

[115] 832 F.2d 933 (5th Cir. 1987).

[116] 809 F.2d 1192, 1194 (5th Cir. 1987).

[117] 831 F.2d 554, 556 (5th Cir. 1987).

[118] Rec. Doc. 79 at 3.

18

seaman status.[119] In *Mudrick v. Cross Equipment Ltd.*, the Fifth Circuit noted that time sheets for one year of the decedent's 23-month employment history were "sufficient to satisfy the flexible requirement that [the court] examine the Decedent's entire employment history to determine his status as a Jones Act seaman."[120] Accordingly, here, the Court will look to the records from 2013, as the parties initially agreed.

The parties do not dispute that in 2013, Desmore spent 21 days aboard the Ensco 87 and three days aboard the Ensco 99, out of a total of 150 work days.[121] Assuming that the Ensco 87 and the Ensco 99 constitute a fleet of vessels and considering the days worked, Desmore worked only 16 percent of the time aboard the Ensco vessels. Therefore, under this interpretation, Desmore would not meet the duration requirement.

Desmore asserts that the Court should not consider the time that he spent on-call in calculating his work time.[122] Desmore contends that considering only his "active working hours," i.e. the time he was actually assigned to PCL services jobs, he spent 89 percent of his time aboard Ensco vessels in 2013.[123] BHOOI counters that counting only these days spent working on vessels in calculating the percentage of time spent working on vessels "is tautological absurdity."[124] The parties do not dispute that Desmore was paid for his on-call time, and he was required to spend at least some of his on-call time at BHOOI's facilities in Houma, Louisiana.[125] Accordingly, the Court

---

[119] Rec. Doc. 83 at 3 (citing *Mudrick v. Cross Equipment Ltd.*, 250 F. App'x 54, 59 (5th Cir. 2007)).

[120] *Mudrick*, 250 F. App'x at n.2.

[121] Rec. Doc. 58-4 at 3; Rec. Doc. 73-1 at 2.

[122] Rec. Doc. 73 at 6.

[123] *Id.*

[124] Rec. Doc. 79 at 4.

[125] In his affidavit, Desmore attests that he spent "minimal time" at BHOOI's facilities "preparing and maintaining his PCL tools and equipment for future offshore PCL jobs." Rec. Doc. 73-2 at 3. In an affidavit submitted by BHOOI, Tim Theriot attests that Desmore was required to "report to BHOOI's shop facilities in

finds that it would be inappropriate to exclude the time spent on-call in calculating Desmore's work time.

Desmore also argues that, even including his on-call time, he still meets the 30 percent test because he was at sea on Ensco vessels for approximately 576 out of 1,647 total hours, or 35 percent of the time. BHOOI does not directly respond to Desmore's assertion. Instead it contends that Tim Theriot's affidavits and work history figures give Desmore credit for a full day offshore, when he may have only spent one hour of that day offshore.[126] Therefore, if the test were to be based on hours worked, BHOOI contends that "the math would only get worse for Mr. Desmore."[127]

The Fifth Circuit has upheld a finding of seaman status based on the number of hours worked rather than the number of days.[128] Here, the Court finds that a factual dispute exists regarding the duration of Desmore's assignment to the Ensco 87 and the Ensco 99. On this record, the Court is unable to determine the number of hours actually worked by Desmore. Desmore's assertion that he worked aboard Ensco vessels for approximately 576 out of 1,647 total hours appears to be an extrapolation from the affidavit of Tim Theriot, which calculated the number of days Desmore worked but not the number of hours. BHOOI asserts that Plaintiffs' calculation of the hours worked is inaccurate because Theriot's affidavit gave Desmore credit for a full day offshore, when he may have only spent an hour offshore. However, BHOOI offers no alternative calculation of the number of hours Desmore worked.

---

Houma, Louisiana, on a daily basis during the regular five (5)-day work week, and if necessary on the weekend." Rec. Doc. Rec. Doc. 79-2 at 3.

[126] Rec. Doc. 79 at 3–4.

[127] *Id.* at 4.

[128] *Mudrick v. Cross Equipment Ltd.*, 250 F. App'x 54, 59 (5th Cir. 2007).

BHOOI provides no authority to support its assertion that it would be inappropriate to consider the hours Desmore worked rather than days he worked in calculating the amount of time he spent working on vessels. Conversely, Plaintiffs provide insufficient evidence to support their arguments as to the number of hours Desmore actually worked. Given that this is a mixed question of law and fact and that the Fifth Circuit instructs that "even marginal Jones Act claims should be submitted to the jury,"[129] the Court finds that summary judgment on this issue is inappropriate.

### c.    *Nature of Connection*

Finally, the parties dispute whether Desmore's connection to the Ensco vessels was sufficiently substantial in nature. On this point, BHOOI contends that Desmore's connection was not to the Ensco 86, but to his employer, BHOOI, whose connection in turn was to Apache, its customer, not to Ensco or to the Ensco 87."[130] BHOOI asserts that "Desmore's connection was to that particular wireline job aboard the vessel, not to the vessel itself," and "[o]nce the job was finished, so was his connection" to the Ensco 87.[131] BHOOI avers that here Desmore never spent more than 14 days aboard a single vessel, "and only by pure random chance and the luck of the draw did he ever return to any single vessel he had previously worked aboard."[132] Plaintiffs contend that every time the Ensco 87 required PCL services in 2013, Desmore was sent aboard by BHOOI.[133]

In considering this *Chandris* prong, the focus of the Court's inquiry is on whether the plaintiff had a "more than incidental" connection to a vessel.[134] In his affidavit, Desmore attests that

---

[129] *Sharp v. Johnson Bros. Corp.*, 917 F.2d 885 (5th Cir. 1990) (citations omitted).

[130] Rec. Doc. 58-1 at 11.

[131] *Id.*

[132] Rec. Doc. 79 at 6.

[133] Rec. Doc. 75-1 at 6.

[134] *Naquin,*, 744 F.3d at 933.

"in 2013, during the time he did work, he was almost exclusively assigned by BHOOI to work and live on vessels owned by Ensco."[135] Moreover, the parties do not dispute that of Desmore's six PCL services job assignments in 2013, four of those assignments were aboard Ensco vessels. The affidavit of Tim Theriot, Field Service Manager for BHOOI, states that it was "solely by pure, random chance" that Desmore was assigned to the Ensco 87 on three occasions in 2013.[136] Accordingly, the Court finds that a genuine issue of material fact exists as to whether Desmore had a connection to the Ensco vessels that was substantial in nature.

## V. Conclusion

The Court has found that no genuine issues of material fact exist regarding whether Desmore contributed to the function of the vessel or to the accomplishment of its mission, and Plaintiffs are entitled to summary judgment on that issue. However, the Court has found that genuine issues of material fact exist as to whether the Ensco vessels constitute a fleet of vessels. Finally, the Court has found that genuine issues of material fact exist regarding whether Desmore had a connection to the Ensco vessels that was substantial in duration and nature. Accordingly,

---

[135] Rec. Doc. 73-2 at 2.

[136] Rec. Doc. 79-2 at 3.

**IT IS HEREBY ORDERED** that Defendant Baker Hughes Oilfield Operations, Inc.'s "Motion for Summary Judgment"[137] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' "Cross-Motion for Summary Judgment"[138] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this ___20th___ day of January, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[137] Rec. Doc. 58.

[138] Rec. Doc. 75.

23